Thank you. May it please the Court, Dennis Moran for the Plaintiff Appellant Mansoor. I'd like to reserve just two minutes. Yes, go ahead. Mr. Mansoor was an 81-year-old man on the vessel Zaandam, walking across the Lido deck with his walker when he slipped. What is a Lido deck? I understand the decks are numbered or lettered, alpha, beta, gamma, and L would be the L deck. That's what they call the Lido deck. That's one way of doing it. Anyway, it's a deck with pools and food service facilities and all that's being briefed. Mr. Mansoor's case presents a not unique problem, not unique circumstance. Elderly folks go on cruises, on Holland America cruises, on Carnival Cruise Lines cruises. They use walkers. When they fall, they get injured very badly sometimes with simple falls that younger folks can take no problem. Mr. Mansoor was one of those gentlemen. He's using a walker because he's had prior health problems, and he slips and falls on a piece of food in an area where food is served openly, kind of a buffet style, fill your own plate and walk across the deck. Now, can I just ask you about that? Sure. I thought from the record that he didn't report to anybody he slipped on the food, and then he went to the doctor, and the food, and he said he slipped on water, and it was only later that he said that there was no evidence, at least initially, or no report of any food, and that came about later. Could you just explain how that all came down? The initial, yes, Mr. Mansoor says he initially reported that he slipped on food. The security gentleman, Mr. Fontaine, says no, nobody said anything about food. This gentleman who was walking around in flip-flops, which obviously Mr. Mansoor was not wearing flip-flops, said he didn't say anything about food in a telephone deposition transcript. So there's a dispute of fact as to whether he said something about food. Now, also take into account this. Mr. Mansoor is a gentleman. English is not his first language. He's 81 years old. He's very old. And the adequacy of Mr. Fontaine's initial investigation was seriously in question in this case. So he says he did say food particles. Mr. Fontaine says he didn't. There's lots of evidence in the record that suggested what Mr. Fontaine said was not exactly accurate. So that question was open. Again, Mr. Fontaine's testimony was a transcript from a telephone deposition. And that's it. Also, his report was not exactly accurate, and that was brought up in several respects. For example, his report said no photographs were taken of the scene, yet late into this case photographs appeared. Mr. Fontaine said, here are the photographs I took, things like that. So that issue was open. But what really the guts of this case really is this, okay, you've got a foreseeable class of people that can be foreseeably damaged, injured from foreseeable conditions. Okay. Very damaged from very foreseeable conditions. And then you have a situation here where one party controls all the access to evidence. Now, if you do your standard negligence analysis, it simply goes like this. Is there a foreseeable danger? Answer, yes. Okay. So does the defendantship owner have a duty to use reasonable care? Of course it does. What is reasonable care under these circumstances? Now, that's where the evidence falls off. We argue at trial that the defense, that the vessel has an obligation to do more than just look the other way. It has an obligation to, you know, have a guy standing by with a bucket, have people on the lookout constantly. Now, the court, the district court correctly noted that the plaintiff was unable to prove what the defendant did or didn't do, because the defense, the vessel owner here, is in total control of all the evidence. And so what does the defense do? They recognize that under the current state of law, they have tremendous benefit from having an absence of evidence. So they have no written guidelines as to how they possibly check the deck. They don't, they have no list of witnesses. They have, in their witness statements, they don't even take the names of people that were around at the time. They have nothing. And so you get into this case, and it turns on essentially constructive notice, which I think we have constructive notice, because you have noticed that, you know, folks are walking around in this area where food is spilled. So do you have any evidence of what the vessel owner does or doesn't do? How do they respond? I seem to recall somewhere that it said that the vessel employed four to six employees who regularly walk around the deck. They walk around the deck continuously. And one of their duties is to clean up any food on the deck. Well, to keep their eyes open for things on deck. Now, these are waiters. These are not spill folks. And let me see if I can crystallize the difference. What's spill folks? Well, if I go down to a mall, right, and I walk at South Center Mall, for example, there's a guy with a bucket sitting there, and his job is to clean up spills. Okay, to watch for them, clean them up, to log them in. Many other places, like if you go to a grocery store, 7-Eleven, and Albertsons, for goodness sakes, people are assigned to periodically go through the aisles to make sure that spills don't happen, because it's foreseeable that a spill can happen. And if you don't have somebody charged with the job of responding to it, at least periodically they'll sit there for a long time, and it's foreseeable that people can fall. Now, just having, just saying our policy is we got guys nearby, and that's the only evidence they had of any kind of response here, we argue is insufficient. Now, the trial court said, well, we didn't have expert evidence. Well, I'm going to suggest that you don't need expert evidence on this thing. I mean, the whole idea of, you know, Daubert and Kumho and all those line of cases says you don't need expert evidence on things that are common sense. Why can't you assign that task to a waiter to look at the floor and walk around the deck? Why does it have to be a spill expert? Well, I'm not saying it has to be a spill expert. I'm just saying it has to be somebody who's actually doing the job. For example, in the grocery store case, you can say, well, we can assign that task to the manager, the guy in the back or the guy up front. And, okay, if that's what you do, then it should be a fact question to the trier of fact to determine whether that was reasonable, a reasonable response to a foreseeable danger. And here the court said no evidence means you don't, you got no evidence. This wasn't an analysis of whether that was reasonable or not. What the court did is the court ruled, and very specific in paragraph 6, it says the plaintiff didn't produce evidence that that was unreasonable. So we lose. Okay, we didn't produce evidence that that was unreasonable. This was this, this, this, and I'll quote it. It says the plaintiff argues that the self-service of food puts the defendants on notice of a dangerous condition. Okay, they were, okay, because of what goes on on this deck. And further, the court says, and therefore makes them liable for any fault caused by food on the deck. That's not what we argued. What we argued is because you're on notice, you have an obligation to respond reasonably. Okay? Now, did they respond reasonably? Did they respond reasonably like a grocery store does or like a food service court does by having somebody assigned there? No, you know, there's no food service court requirement in the maritime arena. Doesn't it boil down to whether you met your burden to show that their response, whether through waiters or periodic checks, was inadequate? Isn't that the final? And the district court, this is a case that came out after a trial, correct? It did come after a trial, but she based the decision, the trial court based the decision not on whether just, you know, whether it was reasonable not just to say we got guys around. Paragraph 6, very careful, she bases the decision on the grounds, she says, plaintiff failed in that burden. Okay? Well, that refers to what? That refers to the previous sentence where it says that cannot be the case, speaking of the dangerous condition. I have to go back to the beginning, but it says that cannot be the case without some evidence that the vessel's response to the known hazards of self-service is inadequate. Okay. So what she's saying is. . . That's another that. What does that refer to? Okay. What she's doing in that paragraph, I think, is she's confusing the notice requirement with the obligation once you have notice. Well, they all relate back to the first sentence. Well, if you have notice. Just a minute. Okay, I'm sorry. They all relate back to the first sentence of that paragraph in which the court concludes that the defendant did not have actual notice. Okay. Right? That's right. That's really the conclusion, and you're not contending that the defendant did have actual notice, are you? Well, what I'm saying is. . . There's no evidence of that. There's no evidence of that because the person who would have control of the evidence is never going to take. . . What's wrong with this conclusion then? Well, the conclusion, because she says there's two ways to have notice, actual and constructive. And I think that's fairly established in the law, actual and constructive. Okay. What's the constructive notice here? Constructive notice says that when you have certain situations, okay, where it's foreseeable that stuff is going to get spilled and people are going to track over it fairly quickly. Okay. Is that foreseeable? Is that a foreseeable danger that requires a reasonable response? A reasonable response being you have people there to address it, so it doesn't just sit there for hours. Okay. All right. You're down to all of your time. Okay. So we'll give you two minutes, Roberto. Okay. Thank you. Good morning, Your Honor. It's John Hayes on behalf of the Holland America defendants, also the vessel Zondam. We're here to ask you to affirm the verdict of the trial court. And as Your Honor correctly stated, that followed a two-day trial when all the witnesses were heard. It's important to understand something here. We're on appeal on a legal issue. There is no challenge to any of the factual findings made in this appeal. And the court, as I think you've already discussed, found that there was no evidence that this gentleman slipped on any food. In fact, the evidence was compellingly and overwhelmingly to the contrary. There was no contemporaneous report of a food spill or a slip on food whatsoever. Well, where do you find that in the findings of fact? The – which part, Your Honor? What you just said. There's no finding that he slipped on food. There's no finding that he slipped on food or didn't slip on food. Or there's no finding that he slipped on water or didn't slip on water. Well, we're not up here on the issue of whether he slipped on food. Oh, well, that's what you were just talking about. You just said he didn't slip on food. There's no evidence that he did. But that's not what the district court was relying on here. The district court was relying on the question of whether there was reasonable notice or constructive notice. Correct. So as far as I can tell from the district court's findings, you might as well assume that he had slipped on food. There's no finding that he didn't or they failed in that burden. Even if you assume he did, Your Honor, the issue on appeal is the legal one, and it has to do to the reasonable care under the circumstances. Yes, that's right. The district court did make some findings on food and the findings of fact, not the conclusions of law. The only thing I saw in there was she affirmed Mr. Mansour's belief that he slipped on food. But there was no other evidence that there was any food on the deck. No, but this business about notice has to relate to something. In other words, you know, the ship did or did not have notice of something. Right. And that's notice of that there was a spill. We're not talking about whether there was a spill. We're talking about whether there was notice of. Right. And there wasn't. There's no evidence in the record that the ship had any notice. I know. But that's different from saying there was no spill. Well, which is what you seem to be saying. I'm saying there's no finding in the record that there was food on the deck. Secondly, there's absolutely findings in the record that the vessel had no notice of food on the deck. And it begs the question of without actual or constructive notice of a dangerous condition, whether the Court was correct in finding for the defendants. Well, that seems to be the issue. Yes. In the conclusions, whether there was actual or constructive notice. Correct, Your Honor. And the Court obviously concluded there wasn't. And the verdict was given for Holland America. And I have to say it's consistent with every appellate decision that addresses slips and falls on passenger vessels, affirming the actual and constructive notice rule of law. It follows from the Cameric decision, reasonable care under the circumstances. Can I ask you a question? I mean, if you just go on constructive notice, which those come out of both the 9th Circuit and the 11th, where all these ship cases are on. Yes, 5th Circuit. 5th, 11th, 9th. But the one thing that seemed a little troublesome here is the idea that you would need expert testimony on what one might need to do on a passenger ship to be reasonable. I mean, let's say they had nobody. Let's say it was a self-service cafeteria and nobody ever cleaned up and nobody waited on anybody. You wouldn't need an expert for somebody to come in and say that that isn't a very good practice. Probably not under those facts. Why would you need an expert here? Well, for instance, we don't know what plaintiff was contending at the trial court about this. The undisputed evidence is we had four to six people monitoring the deck. There was no evidence that that was insufficient by a standard of care for all cruise vessels, which perhaps an expert might opine on. There was no such explanation. We presented what our people did, what the policy was, the fact that four to six people were on duty doing cleanup and busing and monitoring, and the court says that's reasonable under the circumstances. There was no evidence to the contrary. So we're not even here with a fact in opposition to what went in at the trial court. And that's why the judge found it reasonable. Even without notice, she just found that even if you suspended the notice requirement, what Holland America did with those employees met the standard. The standard is what standard? The standard of care under the circumstances with respect to. Well, no. If you disregard the notice, what is that standard? I'm not following you, Your Honor. Well, you said even if you disregard the notice, they still met the standard of care. Correct. That's what the court. My question is what is that standard of care? The standard of care is reasonable efforts under the circumstances on a pool deck. What do you do to monitor the conditions? That I think was what was much at issue at the trial. The only evidence that came in was our evidence. There was no other evidence. As to how you conducted the operation. Correct. And whether it was inadequate because other cruise vessels had 10 people for that amount of passengers, there was no such evidence that came in to the contrary. And I think the court on the evidence found it reasonable. She had no reason not to. Is there a finding that it was reasonable in the findings? Or in the conclusion? Hold on, Your Honor. It's number six, Your Honor. Conclusion of law number six. Conclusion six? Yes, Your Honor. It's pretty lengthy. I won't reiterate it. But her bottom sentence was without some evidence that the vessel's response to the known hazards of self-serving food handling is inadequate, there can't be liability. That's essentially what she's saying. And there was no evidence. Your Honor, I think the cases that are most closely on point, and I think you've mentioned them, Your Honor, are the Keefe and Everett cases out of the 11th Circuit, particularly the Everett case because it involved a slip on a substance on a dance floor where there was a self-service bar. It's directly analogous to what this case is. And a passenger slipped on some substance on a dance floor where passengers were traversing the dance floor with food and drinks. It's almost the same fact pattern as this, except ours is on a Lido deck, which has a swimming pool and food service. And there the court held the vessel owner has to have some notice that there's a foreign substance on the floor. And the Keefe case, which came – excuse me, the Everett case came about a year after the Keefe case. All the slips and fall cases we put in front of the court and then incited by plaintiff, appellant in this case, required notice, even in the self-service areas. And you have to imagine a vessel with 1,000, 1,500 peoples, all the areas that they traverse with all kinds of possessions, suntan oil, food, drinks. Obviously, if we're going to create a strict liability standard and suspend with notice, we're in a very different ballgame than anybody's ever treated these cases. This is a negligent standard. What did the vessel do under the circumstances to bust this area that had four to six people? And its policy was to clean up immediately. And I think, frankly, the effect of those people and the policy is evident. There was no evidence of food on the deck when this gentleman slipped. He was in an area with water. It doesn't seem to be any doubt he slipped on water. But he's at a swimming pool. And with all due deference to Mr. Mansour, the fact that he was – This would be a different case if the finding were there was no food on the deck. Then you don't have to worry about did they do anything to clean it up. You don't have to worry about all these other issues, about actual notice, constructive notice, what's reasonable as your policy of cleaning up. If there were no food, you wouldn't reach any of those issues. Well, that's probably true, Your Honor. So if the district judge had just said, I find that there was no food on the deck, then some of your arguments that you're just making would – Well, my argument is even if there was food on the deck – Well, that's the issue, is even if there were food. Yeah. Did we act reasonably under the circumstances? There was no evidence to the contrary. The mere presence of food is not enough to establish liability. That's right. And the question seems to be if – is having four to six waiters who are doing other things, is that sufficient? Yes. Okay. How big an area is Square Feet, the Lido Deck? I can give you my personal understanding, Your Honor, but I don't believe it's in the record. It's a large swimming pool area with jacuzzis and hot tubs and a small waiting pool in addition. My recollection of the pool is approximately 20 feet by 15 feet. Twice as big as this courtroom? The whole area? Yes. Oh, easily. Easily. That's the pool area. Excuse me. That's the whole Lido Deck area. It's not just the pool. There are places where people can read books and be in lounge chairs. It's not just the pool area. Anyway, Your Honor, I would reemphasize there were no facts to show the unreasonableness, which is their burden at trial, of how we went about monitoring the decks, inspecting the decks, keeping them clean. Thank you, counsel. Thank you, Your Honor. Thank you. Is that not the issue, counsel, whether having four to six people who are assigned to clean up the deck on a regular basis, whether that's taking reasonable precautions? That's the start of the issue. The question is, do they act reasonably? But here's where it goes, if you follow it through on this case. They say, they have a guy who says we have four to six guys out there. They don't know who they are because they don't keep track. They don't know whether they were even doing it that day or not because they don't keep track. All they've got for evidence is, we've got a policy that says we generally do this, and that's it. And there's no evidence to go any further because if you're going to, you know. Well, you have a finding of fact that says four to six employees were charged with cleaning up. The next finding said, to respond to request, employees were in continuous circulation throughout the deck. And then the judge goes on to talk about the policy. So whether there's also sort of underlying findings that weren't made, I don't know. But these are the findings that we have, and you haven't challenged those findings, correct? Well, I'm going to give some context to them. That was because the findings come from the security officer saying, this is how we do it. Right, but the findings are made, whether if, I guess maybe that, we'll go back to my first question. Did you challenge in your appeal the findings? No, because based on the evidence that was allowed, that's all that was available. But I'm putting context to it, okay? Nobody can say these are the four guys or that these guys, there's not a finding that said these four guys did. But there is a finding that there were four people assigned to that. And as Judge McKeown said, you didn't challenge the findings. No, because there's no finding that says there were four people that were assigned to it and did it and kept track of it and knew how to respond to it and didn't see any skills. There's no findings that say that either. Because there's no evidence that addresses this, because all of the evidence is in the heads of these guys in the Philippines or in Holland America's heads, and they don't take records. They don't keep records. So that's where we go with this. Bottom line is, you have a situation. Real quick. I'm sorry. Thank you. Case disargued will be submitted. Next case for argument is Diouf v. McCasey.
judges: Reinhardt, Tashima, McKeown